

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

| | | |
|---|---|---|
| Christopher M. Rigali<br>*Assistant United States Attorney*<br>Christopher.Rigali@usdoj.gov | Suite 400<br>36 S. Charles Street<br>Baltimore, MD 21201-3119 | DIRECT: 410-209-4831<br>MAIN: 410-209-4800<br>FAX: 410-962-0716 |

August 11, 2021

Richard B. Bardos, Esq.
Shulman Hershfield & Gilden, P.A.
One East Pratt Street, Suite 904
Baltimore, Maryland 21202

   Re: <u>United States v. Kyell A. Bryan</u>, Criminal No. JKB-20-195

Dear Counsel:

  This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Kyell A. Bryan (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **September 9, 2021**, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense of Conviction

1. The Defendant agrees to plead guilty to Count Thirteen of the Superseding Indictment, which charges him with Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A. The Defendant admits that he is, in fact, guilty of the offense and will so advise the Court.

### Elements of the Offense

2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Superseding Indictment, in the District of Maryland,

   a. The Defendant knowingly transferred, possessed, or used;
   b. Without lawful authority;
   c. Means of identification of another person;
   d. During and in relation to a felony enumerated in 18 U.S.C. § 1028A(c), specifically, Wire Fraud in violation of 18 U.S.C. § 1343.

### Penalties

3. The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| CT. | STATUTE | MAND. MIN. IMPRISON-MENT | MAX IMPRISON-MENT | MAX SUPERVISED RELEASE | MAX FINE | SPECIAL ASSESS-MENT |
|---|---|---|---|---|---|---|
| 13 | 18 U.S.C. § 1028A | 2 years | 2 years | 1 year | $250,000 | $100 |

    a.    **Prison:** If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

    b.    **Supervised Release:** If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment up to the entire original term of supervised release if permitted by statute, followed by an additional term of supervised release.

    c.    **Restitution:** The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, 3664, and 1593. The parties stipulate and agree that the mandatory restitution provisions of 18 U.S.C. § 3663A apply, and that restitution should be ordered to the victim(s) as set forth below. Any amount of restitution ordered shall be joint and several with co-defendant Jordan K. Milleson. Nothing set forth herein shall preclude any victim from filing an additional claim for restitution as authorized by statute.

| VICTIM | RESTITUTION |
|---|---|
| Individual Victim 3 | $16,847.47 |

    b.    **Payment:** If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

    c.    **Collection of Debts:** If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

<u>Waiver of Rights</u>

4.    The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

    a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

    e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

    g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

    h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can

lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

<u>Advisory Sentencing Guidelines Apply</u>

5.    The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

<u>Factual and Advisory Guidelines Stipulation</u>

6.    This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein. This Office and the Defendant further agrees that the applicable guidelines are as follows:

   a.    **Advisory Sentence:** Pursuant to U.S.S.G. § 2B1.6, the guideline sentence is the two-year term of imprisonment required by statute. Chapters Three (Adjustments) and Four (Criminal History and Criminal Livelihood) shall not apply.

7.    There is no agreement as to the Defendant's criminal history.

8.    Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

<u>Obligations of the Parties</u>

9.    At the time of sentencing, this Office and the Defendant will jointly recommend a sentence of two years' imprisonment, followed by 1 year of supervised release. This Office reserves the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office deems relevant to sentencing, including the conduct that is the subject of the Superseding Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

10.    At or prior to sentencing, the Defendant agrees to execute necessary documents to abandon the following property to the United States, all of which was seized by law enforcement on October 27, 2020 at 47 Holiday Drive, Apt. 96, Kingston, Pennsylvania:

   a. Apple MacBook Air notebook computer with serial number FVFZLE4ALYWL

b. MSI self-built tower computer with serial number 031519074101

c. SanDisk Cruzer Glide 32 GB Thumb drive

d. 1 Trezor Wallet (Gold-No Further Information

e. Apple iPhone 6 model A1549 cellular phone bearing IMEI number 354404054163294

f. Apple iPhone 7 model A1660 cellular phone bearing IMEI number 359166073456044

g. Apple iPhone 11 cellular phone bearing IMEI number 353974100858025

h. Motorola model XT-1962-1 cellular phone bearing IMEI number 355569093649494

i. Apple iPhone 6s model A1633 cellular phone bearing IMEI number 353341076552315

j. Motorola model XT-1962-1 cellular phone bearing IMEI number 355569093702533

k. LG Cell (Grey) (LG Aristo model LGMS210 cellular phone bearing IMEI number 359998080328794

l. Motorola Cell (White-No Further Information)

m. iPhone (Silver) (Apple iPhone 6 cellular phone bearing IMEI number 354450062394613

n. iPhone (white) (Apple iPhone 6 cellular phone bearing IMEI number 356149094922742

o. iPhone (Grey-No Further Information)

p. Miscellaneous SIM Cards.

### Waiver of Appeal

11. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute.

    b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and

imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

        (i)        The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

        (ii)       This Office reserves the right to appeal any sentence below a statutory minimum.

        c.        The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Defendant's Conduct Prior to Sentencing and Breach

12.    a.    Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

        b.    If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement; and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein.

### Court Not a Party

13.    The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

Entire Agreement

14. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Jonathan F. Lenzner
Acting United States Attorney

By: _____
Christopher M. Rigali
Zachary A. Myers
Assistant United States Attorneys

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

10-19-21
Date

_____
Kyell A. Bryan

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises that he understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

10-19-21
Date

_____
Richard B. Bardos, Esq.

## ATTACHMENT A
## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

In June 2019, the Defendant, Kyell A. Bryan, agreed with others, including co-defendant Jordan K. Milleson, who he originally only knew by Milleson's online alias, to carry out a scheme to steal cryptocurrency from others. The scheme was carried out by fraudulently obtaining the login credentials of wireless service provider employees or affiliates, using the stolen credentials to access the service providers' computer networks and conduct unauthorized "SIM swaps," leveraging their unauthorized access to victims' cellular telephone accounts to gain unauthorized access to the victims' electronic accounts, including email and financial accounts, and then unlawfully transferring to their own accounts cryptocurrency from the victims' accounts.

Specifically, in June 2019, Milleson was able to use one of several phishing websites he set up to steal the login credentials of legitimate users of the wireless provider's computer networks, including Individual Victim 2. On June 25, 2019, the Defendant and Milleson used the credentials of Individual Victim 2 to gain unauthorized access to a particular wireless provider's computer network. Accessing that computer network, the Defendant and Milleson executed "SIM swaps," taking control of the wireless calls and text messages sent to the account of Individual Victim 3. In order words, the Defendant and Milleson knowingly and intentionally used stolen login credentials to redirect phone and text message traffic intended for Individual Victim 3's mobile device to a device controlled by them. Investigators obtained during the course of their investigation communications between the Defendant, Milleson, and others, which indicated that the Defendant had physical control of the device to which the phone and text traffic was being redirected.

After conducting a successful "SIM swap" of Individual Victim 3's phone account, the Defendant, Milleson, and others used their access to gain unauthorized access to Individual Victim 3's online accounts, including his/her email account and an account held with a digital currency exchange.

Once inside Individual Victim 3's digital currency account, Milleson told his co-conspirators, including the Defendant, there was "16k" in the account. The Defendant then directed Milleson to transfer the funds out of the account. Milleson unlawfully transferred to an account controlled by him digital currency valued at the time at approximately $16,847.47 from Individual Victim 3's account.

Within hours of this theft of nearly $17,000 in digital currency, the Defendant and his accomplices began to suspect that Milleson had "snaked" them out of their share of the stolen money. The Defendant began threatening Milleson unless Milleson shared in the proceeds of their crimes. The Defendant wrote to Milleson, "YOU ARE CAPPING MY N****," and "stop trying to play me my n*****." One of the Defendant's other accomplices immediately followed up, stating "imma burn down ur house and shred it to its core when I get info on u imma ruin ur life just like what I did to [another individual]."

The Defendant and the other accomplices then began plotting to uncover Milleson's true identity so that they could exact revenge. The Defendant told the others that he believed the person who had "snaked" them was "chikri," an online moniker Milleson used elsewhere. The Defendant asked a chat room, "do you have chikri['s] dox," meaning actual identifying information for Milleson, such as his real name, address, and contact information. Another member of the chat room responded, "chikri is doxed," "if I find it ill get m to swat it," and "chikri will fold." "Swatting" refers to a criminal harassment tactic in which a person places a false call to authorities, such as a bomb threat, murder, or hostage situation, with the intent to trigger a police or SWAT response to a specific address; due to the nature and content of the hoax calls involved in swatting attacks, responses to the calls can, and have, resulted in life-threatening situations.

Then Defendant subsequently learned that "chikri" also went by "Jordy." In a series of messages in an online chat, the Defendant wrote: "Do you have info on Jordy[?]"; "He snaked me and [accomplice's name]" for "20k"; "he didn['t] even know how to get the money out"; "I literally had to explain to him and help him for an hour"; "he took money out [and] I helped him clean it"; "then he made this lie the whole night and basically when I cought [sic] him in the lie he admitted he snaked and removed us from group." Shortly thereafter, the Defendant told the chat room that he was on the phone with Milleson's father.

Around this time, the Baltimore County Police Department ("BCoPD") received a call from an unknown male claiming that he shot his father and was threatening to shoot himself. The male caller stated he was at Milleson's home address and advised he was still armed with a handgun. During the call, the unknown male threatened to shoot police if confronted.

The BCoPD dispatched patrol officers to respond to Milleson's address and established a command post in preparation for a barricade situation. Officers subsequently learned, however, that there was no true emergency situation at the Milleson residence.

Milleson's father told law enforcement that, just prior to the police contact, they received a phone call from an unknown person who told Milleson's father that Milleson stole $20,000 from him. The caller also told him that Milleson was a hacker that went by the alias, "Chikri."

The Defendant agrees that he and his accomplices carried out the "swatting" attack targeting the Milleson family's Baltimore County residence. The Defendant agrees that he and others swatted Milleson because Milleson initially refused to share in the money that they had stolen from Individual Victim 3.

During the course of investigating the Defendant for the conduct described above, investigators uncovered evidence that the Defendant solicited another "swatting" attack the same month (June 2019) he participated in the swatting of the Milleson residence. Specifically, investigators obtained online communications in which the Defendant asked another individual to carry out a swatting at a particular residence in Washington State. The Defendant, providing a specific address, wrote: "[W]anna swat this n**** for me[?]" After a few more communications, the other party to the conversation wrote, "done," and the Defendant responded "thanks" and "LOL." That day, law enforcement in fact received a bogus call reporting that a person had just shot one of their family members at the address provided by the Defendant in the online chat. Law enforcement responded to the perceived emergency situation, only to later learn that it was a "swatting."

## Conclusion

The Defendant agrees that he knowingly possessed, used, and attempted to use, without lawful authority, a means of identification of another person (Individual Victim 3), during an in relation to the following crimes: Wire Fraud, 18 U.S.C. § 1343, Unauthorized Access of a Protected Computer in Furtherance of Fraud, 18 U.S.C. § 1030(a)(4); and Intentional Damage to a Protected Computer, 18 U.S.C. § 1030(a)(5)(A).

SO STIPULATED:

_____
Christopher M. Rigali
Zachary A. Myers
Assistant United States Attorneys

_____
Kyell A. Bryan
Defendant

_____
Richard B. Bardos, Esq.
Counsel for Defendant